IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANDRA CRISSWALLE,         )
          )
        Petitioner,    )    Civil Action No. 2:18-cv-1591
          )
      v.        )
          )    Magistrate Judge Patricia L. Dodge
ERIC TICE, *et al.*,     )
          )
        Respondents.   )

## MEMORANDUM

Pending before the Court[1] is the Petition for a Writ of Habeas Corpus filed by state prisoner Andra Crisswalle ("Petitioner") pursuant to 28 U.S.C. § 2254. ECF No. 1. For the reasons set forth below, the Court will deny the Petition because each of Petitioner's claims are procedurally defaulted and will deny a certificate of appealability.

### I.    Introduction

Petitioner challenges the judgment of sentence imposed by the Court of Common Pleas of Allegheny County on his convictions of three counts of first-degree murder and related crimes. He raises four grounds for relief in his Petition. He contends that the trial court erred, and violated his right to due process, when it: denied his request to sever his trial from that of his co-defendant, William Thompson (Claim I); denied his motion for a line-up (Claim II); and permitted Catrell Boyd and David Eynon to testify on the hearsay statements of Duane Morris (Claim IV). Petitioner also claims that he was denied a jury of his peers (Claim III), in violation of his equal protection rights and the rule of *Batson v. Kentucky*, 476 U.S. 79 (1986). ECF No. 1 at 11-16.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

In their Answer, Respondents assert that the Court must deny the Petition because Petitioner procedurally defaulted his claims for failing to raise them to the Superior Court of Pennsylvania and that there are no grounds to permit him to avoid his default. ECF No. 8.[2] Petitioner did not file a Reply. *See* Local Rule 2254(E)(2) ("the petitioner may file a Reply (also known as 'a Traverse') within 30 days of the date the respondent files its Answer.").

## II.     Relevant Background

Around 7:00 p.m. on January 25, 2002, two masked individuals armed with semi-automatic weapons entered Mr. Tommy's, a restaurant located in the Homewood neighborhood of Pittsburgh, and opened fire. Eight-year-old Taylor Coles was shot three times. Her mother, Terri Coles, was shot once in the shoulder and Taylor's father, Parrish Freeman, Sr., was shot three times. Thomas Mitchell, who was a paraplegic, was shot ten times (nine times in his torso and once, from point-blank range, in his head). Taylor Coles, Freeman, and Mitchell died from the injuries they sustained in the shooting. *See* Resp's Ex. 41, trial court's Appellate Rule 1925(a) opinion ("Trial Ct. Op.") at 8-11.[3]

The Commonwealth charged Petitioner and Thompson with three counts of criminal homicide, one count of aggravated assault as to Terri Coles, one count of carrying a firearm without a license, six counts of recklessly endangering another person,[4] and one count of criminal

---

[2] Respondents electronically filed as exhibits to their Answer (ECF Nos. 9, 11-13) the relevant parts of the state court record, including Petitioner's state court appellate briefs and the state court opinions cited herein. They have also submitted a hard copy of the state court record.

[3] In its Appellate Rule 1925(a) opinion the trial court provided a 20-page summary of the events leading up to Petitioner's and Thompson's arrests and the evidence introduced at their trials. Trial Ct. Op. at 8-28. Additionally, in their Answer Respondents set forth a detailed summarization of the procedural history of Petitioner's state criminal proceeding, ECF No. 8 at 1-20, and the evidence introduced at his second trial, *id.* at 20-32. In this Memorandum the Court discusses only that background which is necessary to the disposition of the Petition.

[4] One charge of recklessly endangering another person was later withdrawn.

conspiracy. It also filed a notice of its intention to seek the death penalty in the event either defendant was convicted of first-degree murder. *Id.* at 2.

Petitioner and Thompson's first joint trial ended in a mistrial in November 2004 when the jury was not able to reach verdicts on any of the counts as to both defendants. *Id.* at 2, 21. The Commonwealth subsequently withdrew its certifications as a capital case and their second trial was held on February 22, 2005 through March 23, 2005. *Id.* at 2. Attorney James A. Wymard was Petitioner's trial attorney. The jury convicted Petitioner of three counts of first-degree murder and also found him guilty of the other charges filed against him. The jury was deadlocked with respect to the charges filed against Thompson and, therefore, a mistrial was declared as to his case. Thompson was retried in September 2005 and at the conclusion of this trial the jury found him guilty on all charges. *Id.* at 2-3.

The trial court sentenced Petitioner on June 20, 2005 to three consecutive terms of life imprisonment on the first-degree murder counts plus a consecutive aggregate sentence of 28 ½ to 57 years' imprisonment on the other counts.

Attorney Norma Chase represented Petitioner in his direct appeal. She filed a concise statement of matters complained of on appeal which raised 29 issues, including the four claims of trial court error that Petitioner brings before this Court in his Petition. Resp's Ex. 38. In its Appellate Rule 1925(a) opinion the trial court addressed all of Petitioner's claims on the merits and determined that they had no merit. *Id.* at 28-31 (Claim I); *id.* at 31-34 (Claim II); *id.* at 43-47 (Claim III); *id.* at 49-53 (Claim IV); *id.* at 34-72 (disposing of Petitioner's other claims).

Thereafter, Petitioner filed his counseled brief to the Superior Court. Resp's Ex. 43. Importantly, Petitioner no longer raised any of the claims he now brings before this Court in his Petition. He raised only the following three claims to the Superior Court:

1. The trial court erred in admitting testimony about the drugs found on the individuals who were arrested with Petitioner and about his drug dealing during his incarceration;

2. The trial court erred in refusing to declare a mistrial based on the prosecutor questioning him about an incident years earlier in which one of the homicide victims (Mitchell) was shot and rendered a paraplegic; and

3. The trial court erred in refusing to suppress statements he made to a wired informant while represented by counsel and in permitting him to be questioned about those statements.

*Id.* at 3, 18, 22-33.[5]

The Superior Court affirmed Petitioner's judgment of sentence in *Commonwealth v. Crisswalle*, No. 1261 WDA 2005, slip op. (Pa. Super. Ct. Feb. 22, 2012). Resp's Ex. 46. It denied on the merits the three claims before it, adopting in full the reasoning given by the trial court on the merits.

The Supreme Court of Pennsylvania denied a petition for allowance of appeal. Resp's Ex. 50. The United States Supreme Court denied a petition for a writ of certiorari on February 25, 2013.

Next, Petitioner, through Attorney Paul Gettleman, filed a petition for relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), which he later supplemented. *See* Resp's Exs. 52, 53, 59, 61, 62. Petitioner raised numerous claims of ineffective assistance of trial counsel. He also asserted that Attorney Chase was ineffective for failing to raise on direct appeal challenges to: (1) the prosecutor's question to his aunt about which hand he uses to shoot a gun; (2) the prosecutor's impeachment of defense witness Jerome Solomon; and (3) the Commonwealth's use of one its confidential informants. Resp's Ex. 52 at 3-4; Resp's Ex. 53 at 1-2; Resp's. Ex. 59 at

---

[5] Petitioner also asserted in the appellate brief that the number of issues raised in his statement of matters complained of on appeal should not result in a waiver of the three claims that he was pursuing before the Superior Court. Resp's Ex. 43 at 19-21.

14-15. Notably, Petitioner did not assert that Attorney Chase was ineffective for failing to raise to the Superior Court in his direct appeal any of the claims Petitioner brings before this Court in his Petition.

Judge David R. Cashman, who had presided over Petitioner's trials, recused himself and Petitioner's PCRA case was assigned to Judge Jeffrey A. Manning. Resp's Ex. 58. Judge Manning denied all of Petitioner's PCRA claims. *See* Resp's. Exs. 59, 61, 63, 67.

Petitioner, through Attorney Gettleman, filed an appeal with the Superior Court. He raised the following five claims to the Superior Court:

1. Judge Manning erred in denying his PCRA claims without a hearing;

2. Trial counsel was ineffective for not objecting to the closing argument of the prosecutor which both improperly bolstered the credibility of a Commonwealth witness and denigrated the credibility of defense witness Jerome Solomon;

3. Trial counsel was ineffective, and he was denied his constitutional right to a public trial, when trial counsel informed his mother and aunt that they were not permitted in the courtroom during the jury selection process;

4. Trial counsel was ineffective for failing to object when the prosecutor, during his cross-examination of Petitioner, asked him about whether he was responsible for the prior shooting of Mitchell which had rendered him a paraplegic; and

5. Trial counsel was ineffective for failing to object to the trial court's alibi instruction.

Resp's Ex. 69.

On June 1, 2018, the Superior Court affirmed Judge Manning's decision denying PCRA relief. *Commonwealth v. Crisswalle*, No. 349 WDA 2017, slip op. (Pa. Super. Ct. June 1, 2018). Resp's Ex. 71. The Supreme Court of Pennsylvania denied a petition for allowance of appeal on November 20, 2018. Resp's Ex. 75.

Thereafter, Petitioner filed his Petition (ECF No. 1) with this Court under 28 U.S.C. § 2254[6] within which he raised Claims I, II, III, and IV. As set forth above, in their Answer (ECF No. 8) Respondents assert that the Court must deny the Petition because Petitioner procedurally defaulted each of his claims and there are not grounds to excuse his default,[7] and Petitioner did not file a Reply.

## III.    Discussion

The "exhaustion doctrine" requires that a state prisoner raise his federal constitutional claims in state court through the proper procedures before he litigates them in a federal habeas petition. *See, e.g., Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). It is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). It "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts[.]" *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Importantly, the Supreme Court has held that a petitioner must have "invoke[d] one complete round of the State's established appellate review process[,]" in order to satisfy the

---

[6] This Court has jurisdiction under 28 U.S.C. § 2254, which confers jurisdiction to a federal court to entertain a habeas petition filed by a state prisoner who is contending that "he or she is in custody in violation of the Constitution…of the United States." 28 U.S.C. § 2254(a).

[7] Respondents also assert that the Petition "may be untimely filed" under the applicable statute of limitations, which was enacted by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and is codified at 28 U.S.C. § 2244(d). ECF No. 8 at 34-35. However, Respondents do not provide the date upon which they contend the statute of limitations expired. They also appear to acknowledge that the Petition was timely filed if the date Petitioner verified he placed it in the prison mailing system is accurate. The Court will not address the statute-of-limitations issue "[b]ecause AEDPA's limitation period is not jurisdictional," *Jenkins v. Sup't of Laurel Highlands*, 705 F.3d 80, 89 (3d Cir. 2013) (citing *Holland v. Florida*, 560 U.S. 631 (2010)), and each of Petitioner's claims are clearly procedurally defaulted and denied for that reason.

exhaustion requirement. *Id*. In Pennsylvania, this requirement means that a petitioner in a non-capital case such as this one must have first presented every federal constitutional claim raised in his federal habeas petition to *the Superior Court either on direct or PCRA appeal. See, e.g., Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).

The doctrine of procedural default, like the doctrine of exhaustion, is "grounded in concerns of comity and federalism," *Coleman*, 501 U.S. at 730. It provides that a Pennsylvania state prisoner in a non-capital case defaults a federal habeas claim if he: (1) failed to present it to the Superior Court and he cannot do so now because the state courts would decline to address the claim on the merits as state procedural rules (such as, for example, the state's waiver rules or the PCRA's one-year statute of limitations) bar such consideration; or (2) failed to comply with a state procedural rule when he presented the claim to the state court, and for that reason the Superior Court declined to address the federal claim on the merits. *See, e.g., Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *O'Sullivan v. Boerckel*, 526 U.S. 838, 851-56 (1999) (Stevens, J. dissenting) (describing the history of the procedural default doctrine); *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Lines v. Larkins*, 208 F.3d 153, 162-69 (3d Cir. 2000).

The first scenario is what has occurred here. As Respondents correctly point out, Petitioner did not properly exhaust any his claims because he did not raise them on appeal to the Superior Court. Because he cannot return to state court and now attempt to litigate his claims because they would be barred by state waiver rules and also by the PCRA's one-year statute of limitations, he has procedurally defaulted each of his claims.

A petitioner may avoid the default of a claim by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" *Coleman*, 501 U.S. at 750. "'Cause' under the cause and prejudice test must be something external to the petitioner, something

that cannot fairly be attributed to him[.]" *Id.* at 753 (emphasis in original). Petitioner does not invoke the "cause" and "actual prejudice" exception to the procedural default doctrine. For example, he does not contend in this case (and he did not assert in his PCRA proceeding when he could raise claims that direct appeal counsel was ineffective), that Attorney Chase "caused" his default of his claims by deciding not to raise them in Petitioner's appellate brief to the Superior Court.

A petitioner may also avoid the default of a claim by demonstrating that the federal habeas court's failure to consider it will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. This type of "gateway" actual innocence claim requires evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Schlup v. Delo*, 513 U.S. 298, 316 (1995); *see, e.g.*, *Reeves v. Fayette, SCI*, 897 F.3d 154, 157 (3d Cir. 2018). The Supreme Court has cautioned that "tenable actual-innocence gateway pleas are rare[,]" *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013), and that "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* at 401 (quoting *Schlup*, 513 U.S. at 316). Petitioner does not invoke this exception to the procedural default doctrine either, and this is not one of those rare cases where the actual-innocence gateway would apply.

Based upon all of the foregoing, Petitioner has procedurally defaulted each of the claims he raised in his Petition and they are denied for that reason.

**IV.     Certificate of Appealability**

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from…the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). It also provides that "[a] certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied because they are procedurally defaulted. Accordingly, the Court will not issue a certificate of appealability on any of Petitioner's grounds for relief.

**V.     Conclusion**

Based upon the foregoing, the Court will deny his Petition and will deny a certificate of appealability.

An appropriate Order follows.


Date:  January 8, 2021

/s/ Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge